UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| TAMMY A. CAPERTON, | ) |
| | ) |
|    Plaintiff, | ) |
| | ) |
|     vs. | ) Cause No. 1:16-cv-40-WTL-MPB |
| | ) |
| NANCY A. BERRYHILL, Acting | ) |
| Commissioner of Social Security,[1] | ) |
| | ) |
|    Defendant. | ) |

## ENTRY ON JUDICIAL REVIEW

Plaintiff Tammy Caperton requests judicial review of the final decision of Defendant Nancy A. Berryhill, Acting Commissioner of Social Security ("Commissioner"), denying her application for Disability Insurance Benefits ("DIB"). The Court rules as follows.

## I. PROCEDURAL HISTORY

Caperton protectively filed her application for DIB in January 2013, alleging onset of disability on January 22, 2013. The Social Security Administration initially denied Caperton's application on April 9, 2013. After Caperton timely requested reconsideration, the Social Security Administration again denied her claim on June 11, 2013. Thereafter, Caperton requested a hearing before an Administrative Law Judge ("ALJ"). The ALJ held a hearing on July 24, 2014, at which Caperton and a vocational expert testified. The ALJ issued her decision denying Caperton's DIB application on August 9, 2014. After the Appeals Council denied Caperton's request for review, she filed this action seeking judicial review.

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Nancy A. Berryhill automatically became the Defendant in this case when she succeeded Carolyn Colvin as the Acting Commissioner of Social Security on January 23, 2017.

## II. EVIDENCE OF RECORD

The relevant evidence of record is amply set forth in the parties' briefs and need not be repeated here. Specific facts relevant to the Court's disposition of this case are discussed below.

## III. APPLICABLE STANDARD

Disability is defined as "the inability to engage in any substantial gainful activity by reason of a medically determinable mental or physical impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of at least twelve months." 42 U.S.C. § 423(d)(1)(A). In order to be found disabled, a claimant must demonstrate that her physical or mental limitations prevent her from doing not only her previous work, but any other kind of gainful employment that exists in the national economy, considering her age, education, and work experience. 42 U.S.C. § 423(d)(2)(A).

In determining whether a claimant is disabled, the Commissioner employs a five-step sequential analysis. At step one, if the claimant is engaged in substantial gainful activity she is not disabled, despite her medical condition and other factors. 20 C.F.R. § 404.1520(b). At step two, if the claimant does not have a "severe" impairment (i.e., one that significantly limits her ability to perform basic work activities), she is not disabled. 20 C.F.R. § 404.1520(c). At step three, the Commissioner determines whether the claimant's impairment or combination of impairments meets or medically equals any impairment that appears in the Listing of Impairments, 20 C.F.R. pt. 404, subpt. P, App. 1, and whether the impairment meets the twelve-month durational requirement; if so, the claimant is deemed disabled. 20 C.F.R. § 404.1520(d). At step four, if the claimant is able to perform her past relevant work, she is not disabled. 20 C.F.R. § 404.1520(f). At step five, if the claimant can perform any other work in the national economy, she is not disabled. 20 C.F.R. § 404.1520(g).

In reviewing the ALJ's decision, the ALJ's findings of fact are conclusive and must be upheld by this court "so long as substantial evidence supports them and no error of law occurred." *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *id*., and this Court may not reweigh the evidence or substitute its judgment for that of the ALJ. *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008). In order to be affirmed, the ALJ must articulate her analysis of the evidence in her decision; while she "is not required to address every piece of evidence or testimony presented," she must "provide an accurate and logical bridge between the evidence and her conclusion that a claimant is not disabled." *Kastner v. Astrue*, 697 F.3d 642, 646 (7th Cir. 2012). "If a decision lacks evidentiary support or is so poorly articulated as to prevent meaningful review, a remand is required." *Id.* (citation omitted).

## IV. THE ALJ'S DECISION

The ALJ found at step one that Caperton had not engaged in substantial gainful activity since her alleged disability onset date. At step two, the ALJ determined that Caperton had the severe impairment of rheumatoid arthritis and non-severe impairments of osteoarthritis of the bilateral hands, carpal tunnel syndrome, depression, and adjustment disorder. The ALJ found at step three that these impairments did not, individually or in combination, meet or equal the severity of one of the listed impairments. The ALJ's residual functional capacity ("RFC") determination was as follows:

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except she can lift and carry up to 20 pounds occasionally and 10 pounds frequently; sit for approximately 6 hours in an 8-hour day; stand and walk approximately 6 hours in an 8-hour day; occasionally bend, stoop, kneel, crouch, crawl, or climb ramps and stairs; never climb ladders, ropes, or scaffolds; and frequently finger with the bilateral upper extremities.

R. at 81. The ALJ concluded at step four that Caperton could perform her past relevant work as a vocational instructor. Accordingly, the ALJ concluded that Caperton was not disabled.

## V. DISCUSSION

Caperton argues that the ALJ erred in several respects, each of which is addressed, in turn, below.

### A. Identification of Severe and Non-Severe Impairments

Caperton first argues that remand is required because the ALJ erred at step 2 when she determined that Caperton's only severe impairment was rheumatoid arthritis and that her osteoarthritis of the bilateral hands, carpal tunnel syndrome, depression, and adjustment disorder were not severe. However, "[t]he Step 2 determination is 'a de minimis screening for groundless claims' intended to exclude slight abnormalities that only minimally impact a claimant's basic activities," *O'Connor-Spinner v. Colvin*, 832 F.3d 690, 697 (7th Cir. 2016) (quoting *Thomas v. Colvin*, 826 F.3d 953, 960 (7th Cir. 2016)); *see also Meuser v. Colvin*, 838 F.3d 905, 910 (7th Cir. 2016). The Seventh Circuit has categorized errors in determining an impairment's severity as harmless as long as the ALJ otherwise finds one severe impairment, continues through the steps in the evaluation process, and "consider[s] all of [the claimant]'s severe and non-severe impairments, the objective medical evidence, [the claimant's] symptoms, and her credibility when determining her RFC immediately after step 3." *Curvin v. Colvin*, 778 F.3d 645, 649 (7th Cir. 2015); *see also Arnett v. Astrue*, 676 F.3d 586, 591 (7th Cir. 2012) ("Deciding whether impairments are severe at Step 2 is a threshold issue only; an ALJ must continue on to the remaining steps of the evaluation process as long as there exists even *one* severe impairment. Here the ALJ categorized two impairments as severe, and so any error of omission [at Step 2 regarding the severity of other impairments] was harmless.") (emphasis in original) (citations omitted). The failure to categorize some of Caperton's impairments as severe at step 2, even if erroneous, does not, by itself, require remand.

4

More problematic, however, is the ALJ's finding that anxiety is not one of Caperton's medically determinable impairments.[2] The ALJ recognized that Caperton "alleged functional limitations secondary to anxiety," but found that "there are no clinical findings to confirm a medically determinable impairment." R. at 82. Accordingly, the ALJ did not consider Caperton's alleged anxiety-related symptoms in arriving at her RFC, and may well have considered the fact that Caperton claimed to have such symptoms as an indication that she lacked credibility. However, as Caperton pointed out, the record is replete with references to Caperton's symptoms of anxiety, and Dr. William Shipley, a psychologist who completed a Psychiatric Review Technique Form regarding Caperton for the state agency, found that Caperton had the non-severe impairment of anxiety disorder. *Id.* at 97. The ALJ does not point to any medical evidence to support her belief that necessary "clinical findings" relating to anxiety are lacking, and her finding in that regard directly contradicts Dr. Shipley's opinion—an opinion to which the ALJ gave "the most weight" because it is "reasonably consistent with the record as a whole."[3] *Id.* at 85. It was error for the ALJ to substitute her judgment for that of Dr. Shipley's in the absence of any contrary medical opinion. *See Browning v. Colvin*, 766 F.3d 702, 705 (7th Cir. 2014) (noting that administrative law judges are not permitted to "play doctor"). Because this error resulted in the ALJ failing to consider Caperton's anxiety-related symptoms in her RFC determination, remand is required. On remand, the ALJ shall take care to

---

[2]Caperton lists several additional impairments that are mentioned in her medical records that she says the ALJ should have considered. Caperton makes no effort to explain how these other impairments affect her, however, and it is "the claimant's obligation to explain why certain conditions are disabling." *Yurt v. Colvin*, 758 F.3d 850, 860 (7th Cir. 2014) (*Pepper v. Colvin*, 712 F.3d 351, 367 (7th Cir. 2013)).

[3]The Commissioner notes, correctly, that the ALJ was not required to adopt the state agency physicians' opinions in their entirety. However, the ALJ was not permitted to ignore parts of those opinions in favor of her own opinion without pointing to medical evidence to support her conclusion.

5

consider—and articulate her consideration of—the effects of all of Caperton's identified severe and non-severe mental and physical impairments, in combination, on her RFC. *See, e.g.*, *Craft v. Astrue*, 539 F.3d 668, 676 (7th Cir. 2008) ("When determining the RFC, the ALJ must consider all medically determinable impairments, physical and mental, even those that are not considered 'severe.'"). This includes an assessment of whether and to what extent Caperton's mild difficulties with regard to concentration, persistence, and pace affect her ability to work.

### B.  Step 3 Determination

Caperton next argues that the ALJ's analysis regarding whether her impairments meet or equal a listing is inadequate in two respects. First, she argues that the ALJ erred by only discussing Listing 14.09 when the state agency doctors considered several other listings. As the claimant, Caperton "has the burden of showing that [her] impairments meet a listing, and [she] must show that [her] impairments satisfy all of the various criteria specified in the listing." *Ribaudo v. Barnhart*, 458 F.3d 580, 583 (7th Cir. 2006). Because Caperton has not even attempted to point to any evidence in the record that suggests that she satisfies any listing other than Listing 14.09, she is not entitled to remand on that issue.

Caperton does point to evidence which she believes demonstrates that the ALJ erred in finding that her rheumatoid arthritis does not meet or equal Listing 14.09. Some of this evidence—for example, her treating physician's assessment regarding her limitations on using her hands, fingers, and arms, R. at 469 and 500—post-dates the state agency doctors' review of Caperton's records. Indeed, the ALJ recognizes that the state agency doctors did not review the entire record. That is problematic, because "[w]hether a claimant's impairment equals a listing is a medical judgment, and an ALJ must consider an expert's opinion on the issue." *Barnett v. Barnhart*, 381 F.3d 664, 670 (7th Cir. 2004) (citing 20 C.F.R. § 404.1526(b); S.S.R. 96–6P at 3, reinstating S.S.R. 83–19; and *Farrell v. Sullivan*, 878 F.2d 985, 990 (7th Cir. 1989)). On

6

remand, the ALJ shall obtain a medical opinion, based on all relevant evidence of record, regarding whether Caperton meets or equals Listing 14.09.[4]

### C.  Treating Physicians' Opinions

Finally, Caperton argues that the ALJ erred in failing to give her treating physicians' opinions controlling weight pursuant to the treating physician rule, which applies to all claims filed prior to March 27, 2017.

> Under the Treating Physician Rule, a treating physician's opinion "regarding the nature and severity of a medical condition is entitled to controlling weight if it is well supported by medical findings and not inconsistent with other substantial evidence in the record." *Clifford v. Apfel*, 227 F.3d 863, 870 (7th Cir. 2000). When controlling weight is not given, an ALJ must offer "good reasons" for doing so, after having considered: (1) whether the physician examined the claimant, (2) whether the physician treated the claimant, and if so, the duration of overall treatment and the thoroughness and frequency of examinations, (3) whether other medical evidence supports the physician's opinion, (4) whether the physician's opinion is consistent with the record, and (5) whether the opinion relates to the physician's specialty. *Larson v. Astrue*, 615 F.3d 744, 749 (7th Cir. 2010) (citing 20 C.F.R. § 404.1527(d)(2)); 20 C.F.R. § 404.1527(c).

---

[4] The Commissioner argues that "[i]n addition to thoroughly reviewing the medical evidence, the ALJ relied upon the opinions of state-agency reviewing physicians Dr. Corcoran and Dr. Brill, who both concluded that Plaintiff did not meet or medically equal any listed impairment, specifically considering Listings §§ 12.04, 12.06, 12.07, 3.09, and 14.09."  Dkt. No. 13.  However, the ALJ does not mention those opinions in the context of Listing 14.09, and, in fact, all she said about them in her decision was that she gave them the "most weight."  As noted in footnote 3 above, the Commissioner herself argues (correctly) that the ALJ "clearly did not adopt those opinions in their entirety." Dkt. No. 28 at 9-10.  The ALJ does not identify those parts of the opinions she did adopt, and because she does not explain which parts she did and did not adopt, the Commissioner cannot rely on them in support of the ALJ's decision. *See, e.g.*, *Hanson v. Colvin*, 760 F.3d 759, 762 (7th Cir. 2014) ("[*Securities and Exchange Commission v.*] *Chenery [Corp.,* 332 U.S. 194 (1947)] requires that an agency's discretionary order be upheld, if at all, on the same basis articulated in the order by the agency itself.").  Further, while the Commissioner correctly notes that Caperton's treating physicians did not opine that Caperton met or equaled Listing 14.09, that is hardly surprising, as treating physicians are not expected to be familiar with the complex regulatory system that governs disability benefits.  The question is not whether the treating physicians opined about Listing 14.09, but rather whether their opinions and the other medical evidence of record supports a finding that the listing is met or equaled.

*Brown v. Colvin*, 845 F.3d 247, 252 (7th Cir. 2016).  With regard to the opinions of Caperton's two treating rheumatologists about her physical limitations, the ALJ failed to articulate consideration of each of these factors; rather, she determined that the opinions were entitled to little weight because, in the ALJ's opinion, they were not consistent with the physicians' treatment notes.  The ALJ should review this determination on remand, ensuring that she does not succumb to the temptation to "play doctor" and instead elicits a medical opinion about whether the inconsistencies she perceives are, in fact, inconsistencies.

### D.  Step 5 Determination

One final note is in order.  While Caperton does not raise this issue, the Court is troubled by the ALJ's finding that Caperton's past relevant work as a trainer at a fast food restaurant is the equivalent of a "vocational instructor" as that job is defined in the Dictionary of Occupational Titles.  It is not, and the vocational expert did not testify that it was, but rather that it was "as close as [she] could get to Caperton's training job" because "the DOT is so outdated."  R. at 63, 64.  The job of vocational instructor is defined in the DOT as:

> Teaches vocational training subjects to students in public or private schools or in industrial plants: Organizes program of practical and technical instruction, including demonstrations of skills required in trade, and lectures on theory, techniques, and terminology. Instructs students in subject areas, such as mathematics, science, drawing, use and maintenance of tools and equipment, codes or regulations related to trade, and safety precautions. Plans and supervises work of students, individually or in small groups, in shop or laboratory. Tests and evaluates achievement of student in technical knowledge and trade skills. May be identified according to trade or theory taught or type of establishment in which training is conducted, such as plumbing, electronics, or dental assistance. May place students in job training. May teach students with disabilities. May be required to have certification from state.

DOT Code 097.221-010.  This is a far cry from providing on-the-job training to new employees at a fast food restaurant.  There is no indication that Caperton has the education or skills necessary to do the job described in the DOT, which clearly requires more than simply showing a new employee how to do a specific job.  The ALJ should reexamine this issue on remand.

8

## VI.  CONCLUSION

For the reasons set forth above, the decision of the Commissioner is **REVERSED** and this case is **REMANDED** to the Commissioner for further proceedings consistent with the Court's Entry.

SO ORDERED: 3/30/17

*William T. Lawrence*

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to all counsel of record via electronic communication